STATE, Respondent, v. MANSFIELD, Appellant. [Case No. State 170.]

HOLMES, Plaintiff in error, v. STATE, Defendant in error. [Case No. State 177.]

*Nos. State 170, 177. Argued June 7, 1972.—Decided June 30, 1972.*
(Also reported in 198 N. W. 2d 634.)

For the appellant in Case No. State 170 there was a brief by *Frederick T. Rikkers* and *Rikkers, Rikkers & Rothstein,* all of Madison, and oral argument by *Frederick T. Rikkers.*

For the respondent in Case No. State 170 the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the plaintiff in error in Case No. State 177 there was a brief by *Frederick T. Rikkers and Rikkers, Rikkers & Rothstein,* all of Madison, and oral argument by *Frederick T. Rikkers.*

For the defendant in error in Case No. State 177 the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J. Before reaching the merits of the cases here, a problem of jurisdiction is presented. In the Mansfield case (St. 170), the judgment of conviction was entered on March 16, 1971, but the notice of appeal was not filed until September 2, 1971. This exceeds the ninety-day appeal time set by sec. 974.03, Stats. While a motion was made under sec. 974.06, it too was made without the ninety-day appeal time and in any event the making of such a motion does not extend the time for appeal.

We conclude, therefore, that the appeal from the Mansfield judgment of conviction must be dismissed as

untimely taken. The effect of this is to limit our review on the Mansfield appeal to those questions properly raised by the sec. 974.06 motion which was denied. As to this, we have previously indicated that evidentiary questions and the propriety of jury instructions cannot be reached by a sec. 974.06 motion as distinguished from a motion for a new trial.[1] Thus, in the Mansfield appeal the asserted errors relating to the nonconstitutional defects in the trial procedure are not properly before the court in that appeal and will not be considered. The sole issue, and it is the principal issue in both the Mansfield jury trial and the Holmes guilty plea cases, is whether the affidavit supporting the search warrant is sufficient.

In support of their argument that the affidavit did not sufficiently establish the credibility and reliability of the informants referred to in the affidavit, defendants rely upon *Aguilar v. Texas* [2] and *Spinelli v. United States*.[3] In these cases the Supreme Court of the United States discussed the requirements for an affidavit in support of a search warrant in which hearsay statements of third parties are given. In *Aguilar* the court established two requirements:

1. The application for a search warrant must set forth sufficient "underlying circumstances" necessary to enable the magistrate to independently judge the validity of the informant's information.

2. The police officers must support their claim that the informant was reliable and credible.[4]

In *State v. Knudson* [5] this court indicated:

[1] *State v. Langston* (1971), 53 Wis. 2d 228, 231, 191 N. W. 2d 713; *Peterson v. State* (1972), 54 Wis. 2d 370, 381, 195 N. W. 2d 837.

[2] (1964), 378 U. S. 108, 84 Sup. Ct. 1509, 12 L. Ed. 2d 723.

[3] (1969), 393 U. S. 410, 89 Sup. Ct. 584, 21 L. Ed. 2d 637.

[4] See *Spinelli v. United States, supra,* footnote 3, at page 413.

[5] (1971), 51 Wis. 2d 270, 274, 187 N. W. 2d 321, quoting from *State v. Paszek* (1971), 50 Wis. 2d 619, 627, 184 N. W. 2d 836.

" '. . . Simply stated, the two-pronged test of *Aguilar* requires that the officer must establish: (1) The underlying circumstances from which he concludes that the informant is reliable; and (2) that the underlying circumstances or manner in which the informant obtained his information is reliable.' "

In *Spinelli* the supreme court maintained the *Aguilar* criteria, but emphasized the requirement that the affidavit set out the underlying facts which make the officer believe that his informant is reliable.

As made clear in *Knudson*, this court must apply the two *Aguilar* tests to determine the validity of the affidavit.

### Underlying circumstances.

In this case the underlying circumstances are that the informant actually saw the illicit drug in the defendants' apartment that same day. Inasmuch as the crime is possession of the drug, the informer was, in effect, an eyewitness to the crime. The fact that the hearsay information is an actual eyewitness description of the crime has been given importance both by this court in *Knudson*,[6] and by the United States Supreme Court in *McCray v. Illinois*[7] and *United States v. Harris*.[8] In our opinion the actual observation of the criminal act by the informant is sufficient underlying circumstances to validate the affidavit insofar as the first *Aguilar* test is concerned.

### Reliability.

A much more difficult question is presented as to whether the affidavit sufficiently demonstrated that the

---

[6] *Supra,* footnote 5, at page 276.

[7] (1967), 386 U. S. 300, 87 Sup. Ct. 1056, 18 L. Ed. 2d 62.

[8] (1971), 403 U. S. 573, 91 Sup. Ct. 2075, 29 L. Ed. 2d 723.

informant was reliable. The mere naming of the informant [9] or the bald conclusory statement that he is reliable [10] is not sufficient to establish reliability. This court, anticipating the United States Supreme Court's decision in *Harris,* has placed great emphasis on the informant's OBSERVATION as an element of reliability as well as underlying circumstances. This was made clear in *State v. Paszek* [11] and *State ex rel. Cullen v. Ceci* [12] as well as in *Knudson.* These cases, as well as *United States v. Harris,* [13] support the proposition that observation of the criminal act plus the reliance on the informant by the police are sufficient to support the issuance of a search warrant. In the instant cases the observation is made even more reliable by the informant's description of the defendants and of the wrapping of the drug.

In *Harris,* the supreme court upheld the validity of a search warrant based upon an affidavit from a federal officer who relied on an informant's information relating to the illegal sale of distilled spirits. In overturning the court of appeal's determination that the affidavit was insufficient, the supreme court held that the search was valid because of the informant's knowledge of the criminal act and the officer's confidence in the informant's reliability. Other factors considered by the court were the accused's reputation and the fact that the information given by the informant constituted declarations against his penal interest. [14]

---

[9] *State ex rel. Cullen v. Ceci* (1970), 45 Wis. 2d 432, 447, 173 N. W. 2d 175.

[10] *United States v. Harris, supra,* footnote 8, at pages 582, 583; *State v. Williams* (1970), 47 Wis. 2d 242, 257, 177 N. W. 2d 611.

[11] *Supra,* footnote 5.

[12] *Supra,* footnote 9.

[13] *Supra,* footnote 8, at pages 583, 584.

[14] On June 12, 1972, while these matters were sub judice, the Supreme Court of the United States decided *Adams v. Williams*

The reliability of an informant who gains information from his own observation was pointed out by Mr. Justice BYRON R. WHITE in his concurring opinion in *Spinelli*,[15] in which he said:

"Neither should the warrant issue if the officer states that there is gambling equipment in a particular apartment and that his information comes from an informant, named or unnamed, since the honesty of the informant and the basis for his report are unknown. Nor would the missing elements be completely supplied by the officer's oath that the informant has often furnished reliable information in the past. This attests to the honesty of the informant, but *Aguilar v. Texas, supra,* requires something more—did the information come from observation, or did the informant in turn receive it from another? Absent additional facts for believing the informant's report, his assertion stands no better than the oath of the officer to the same effect."

This court in *Cullen*[16] adopted Mr. Justice WHITE's concurrence in *Spinelli*, Mr. Justice HEFFERNAN stating the court's conclusion as follows:

"Here the fact is that the complaint shows that all whose information was relied upon were eyewitnesses to the portion of the event they related to the sworn complainant. If hearsay is to be credited at all for this limited purpose, what better basis can there be than that of eyewitness testimony. To use the term of Mr. Justice WHITE, the hearsay was clearly based upon 'observation.'"

(1972), 407 U. S. 143, 92 Sup. Ct. 1921, 32 L. Ed. 2d 612, wherein the majority of the court extended the rules relating to a police officer's reliance upon an informer's information in a "stop and frisk" situation. While Mr. Justice WILLIAM H. REHNQUIST, writing for the majority, distinguished *Adams* from the search-warrant situation, the court has definitely indicated an increased reliance upon informants' information to the police.

[15] *Supra*, footnote 3, at page 424.

[16] *Supra*, footnote 9, at page 446.

We conclude that the search was constitutionally valid.[17]

The argument of both defendants that the affidavit in support of the search warrant was insufficient to show probable cause for a search, is merely arguing again the same proposition we have just rejected. Quite clearly, if the information alleged in the affidavit was sufficient and reliable there was probable cause to issue a warrant. All of the basic elements of probable cause were provided.[18]

*By the Court.*—No. St. 170, appeal dismissed from the judgment of conviction; order affirmed. No. St. 177, judgment affirmed.

---

[17] In oral argument counsel for defendants relied primarily upon *State v. Williams, supra,* footnote 10. *Williams* is manifestly different from the present cases inasmuch as in *Williams* the affidavit omitted all supportive facts and simply asserted that the defendant had violated the statute. The warrant demonstrated no underlying circumstances supporting the warrant nor was the reliability of the information asserted.

[18] *Okrasinski v. State* (1971), 51 Wis. 2d 210, 215, 216, 186 N. W. 2d 314.